### PRESIDENT AND FELLOWS OF HARVARD COLLEGE *vs.* BOARD OF ALDERMEN OF THE CITY OF BOSTON.

An assessment by the aldermen of Boston upon land of Harvard College, under the Sts. of 1866, c. 174, and 1868, c. 276, of a part of the expense of altering a street, proportional to the benefit received by the assessed land from the alteration, is a "civil imposition," within the meaning of that term in the clause of the college charter of 1650, exempting from all civil impositions, taxes and rates, lands of the college not exceeding a certain annual value; and if at the time when the land was acquired by the college, before the adoption of the Constitution of the Commonwealth, it was within the limit of the exemption, and continued within it until and at the time when the Constitution was

adopted, the college is entitled to continue to hold it exempted, notwithstanding that its annual value now greatly exceeds the limit, and that the college holds other lands, also exceeding the limit, in value, aside from lands exempted under the general tax acts.

PETITION for a writ of *certiorari* to quash proceedings of the aldermen of Boston laying an assessment on real estate of the petitioners for the expense of widening Devonshire Street in that city.

The petition alleged that the petitioners were owners in fee of a parcel of real estate, situated on Washington Street and extending to Devonshire Street in Boston; that this estate was devised to them by the following provision in the will of Henry Webb, who died in 1660: " *Item.* I give and bequeath unto Harvard College, next and immediately after my decease, my house and land, which I lately purchased of Henry Phillips, and was the late house of Samuel Oliver deceased, with such deed or deeds that concern the same, and the yearly rent whereof, to be improved, after the due and necessary repair thereof is provided for, to be, forever, either for the maintenance of some poor scholars, or otherwise for the best good of the college, to be improved by the care and discretion of the President and Overseers of the College, and approbation of the overseers of this my will;" that the petitioners forthwith accepted, and became seised in fee and possessed of the said estate, and have always since so continued seised and possessed thereof, in trust for the uses and purposes set forth in the will; that in the act incorporating the petitioners, passed at a general court held at Boston in 1650, it is provided "that all the lands, tenements and hereditaments, houses or revenues, within this jurisdiction," to the petitioners appertaining, " not exceeding the value of five hundred pounds per annum, shall from henceforth be freed from all civil impositions, taxes and rates;" and that at the time the petitioners became possessed of the estate devised to them by Henry Webb, and for many years thereafter, all the lands, tenements and hereditaments, houses and revenues, appertaining to them, did not exceed the value of five hundred pounds per annum. It further alleged that on April 11, 1868, the board of aldermen passed an order for the widening of Devonshire Street

in the rear of said estate; that the street was widened in pursuance of the order; and that afterwards, on November 8, 1869 the board passed another order, wherein and whereby the said estate was assessed and charged the sum of forty-five hundred and forty-one dollars and forty cents, for the benefit adjudged by said board to have accrued to said estate by the widening. And finally it alleged " that the said order of the board of aldermen, in assessing and charging said estate of the petitioners the said sum, is erroneous and unlawful, because, under the provision of their act of incorporation aforesaid, the said estate is freed from all civil impositions, taxes and rates; and no tax or other civil imposition has ever been paid by the petitioners on the same, nor has any tax, or civil imposition, or rate, ever before been assessed or charged upon said estate; and the said order of said board of aldermen is, in other respects, wrongful, unlawful, erroneous and void; and by the aforesaid wrongful, unlawful, erroneous and void order, the petitioners have been greatly injured."

A copy of the second order of the respondents was annexed to the petition, by which it appeared that the expense of the widening was $391,237. The schedule annexed to it was entitled a schedule made " in pursuance of the provisions of § 5 of chapter 174 of the acts of 1866, and § 1 of chapter 276 of the acts of 1868," and set the benefits to the various estates at the total sum of $470,550.75, and assessed on them in the aggregate one half of that sum, namely, $235,275.37, — the benefit to the petitioners' estate being estimated at $9082.80, and assessed (as alleged in the petition) $4541.40.

The respondents answered, admitting that the petitioners were seised and possessed of the estate in question; that it was devised to them at the time and in the manner and upon the trusts and for the uses set forth in the petition; and that at the time it was devised to them, and at the time they became seised and possessed of it, their lands, tenements and hereditaments, houses and revenues, did not exceed the value of five hundred pounds a year. But it alleged " that, by their charter, the petitioners are not exempted or freed from civil impositions, taxes

or rates, on their lands, tenements and hereditaments, houses or revenues, beyond the value of five hundred pounds, or two thousand four hundred and twenty dollars, a year; and that now their said estates greatly exceed that value; and that they are possessed of other estates, now of that value, which are by law exempted from taxation, and the value of the estate described in said petition now greatly exceeds that sum." And it further alleged that the sum assessed upon the said estate was not a tax, but one half of the amount of the benefit which the respondents adjudged had accrued, and which had in fact accrued, to said estate by reason of the widening of the street; that the respondents were authorized and required to assess the same thereon under the provisions of the St. of 1866, *c.* 174, and the St. of 1868, *c.* 276; and that the petitioners' charter does not exempt them from the payment thereof. Wherefore it finally alleged " that the respondents' said record, adjudication and assessment, and all their proceedings in the premises, are in every respect conformable to law."

The case was reserved by the chief justice, on the petition and answer, for the determination of the full court, and was argued in June 1870 before all the judges but *Morton*, J.

The material parts of the statutes relied upon by the respondents, are printed *ante*, 463, 464, in the report of the case of *Jones* v. *Aldermen of Boston.* Those of the petitioners' charter are printed below, in the margin.* For the entire charter, see Anc. Chart. 77–81; 4 Mass. Col. Rec. (part 1) 12–14.

---

* " The Charter of the President and Fellows of Harvard College, under the seal of the Colony of Massachusetts Bay, and bearing date May 31, A. D. 1650. Whereas, through the good hand of God, many well devoted persons have been, and daily are, moved and stirred up to give and bestow sundry gifts, legacies, lands and revenues, for the advancement of all good literature, arts and sciences, in Harvard College, in Cambridge, in the county of Middlesex, and to the maintenance of the President and Fellows, and for all accommodations of buildings, and all other necessary provisions that may conduce to the education of the English and Indian youth of this country in knowledge and godliness. It is therefore ordered and enacted by this court and the authority thereof, that for the furthering of so good a work, and for the purposes aforesaid, from henceforth that the said college in Cambridge, in Middlesex, in New

*E. R. Hoar & L. S. Dabney*, for the petitioners, cited *Hardy* v. *Waltham*, 7 Pick. 108; Const. of Mass. part 2, *c.* 5, § 1 *Thompson* v. *Lapworth*, Law Rep. 3 C. P. 149; *Dorgan* v. *Boston*, 12 Allen, 223; *State* v. *Charleston*, 12 Rich. 702; *McComb* v. *Bell*, 2 Minn. 295; *Schenley* v. *Allegheny*, 25 Penn. State, 128; *Williams* v. *Detroit*, 2 Mich. 560; *Woodbridge* v. *Detroit*, 8 Mich. 274; *People* v. *Brooklyn*, 4 Comst. 419; *Brewster* v. *Syracuse*, 19 N. Y. 116; *Burnett* v. *Sacramento*, 12 Cal. 76, *Egyptian Levee Co.* v. *Hardin*, 27 Missouri, 495; *In the matter of Dorrance Street*, 4 R. I. 230; *Anderson* v. *Kerns Draining Co.* 14 Ind. 199; *Webster* v. *Alton*, 9 Fost. 369; *Nichols* v *Bridgeport*, 23 Conn. 189; *State* v. *Jersey City*, 4 Zab. 662;

England, shall be a corporation, consisting of seven persons, to wit, a president, five fellows, and a treasurer or bursar;" "which said President and Fellows for the time being shall forever hereafter, in name and fact, be one body politic and corporate in law, to all intents and purposes, and shall have perpetual succession, and shall be called by the name of President and Fellows of Harvard College, and shall from time to time be eligible as aforesaid; and, by that name, they and their successors shall and may purchase and acquire to themselves, or take and receive upon free gift and donation, any lands, tenements or hereditaments, within this jurisdiction of the Massachusetts, not exceeding the value of five hundred pounds per annum, and any goods and sums of money whatsoever, to the use and behoof of the said president, fellows and scholars of the said college; and also may sue and plead, or be sued and impleaded, by the name aforesaid, in all courts and places of judicature within the jurisdiction aforesaid." "And also that the president and fellows, or major part of them, with the treasurer, shall have power to make conclusive bargains for lands and tenements, to be purchased by the said corporation for valuable consideration." "And further, be it ordered by this court and the authority thereof, that all the lands, tenements and hereditaments, houses or revenues, within this jurisdiction, to the aforesaid president or college appertaining, not exceeding the value of five hundred pounds per annum, shall from henceforth be freed from all civil impositions, taxes and rates; all goods to the said corporation, or to any scholars thereof, appertaining, shall be exempted from all manner of toll, customs and excise whatsoever; and that the said president, fellows and scholars, together with the servants and other necessary officers to the said president or college appertaining, not exceeding ten, — viz., three to the president and seven to the college belonging, — shall be exempted from all personal civil offices, military exercise or services, watchings and wardings and such of their estates, not exceeding one hundred pounds a man, shall be freed from all country taxes and rates whatsoever, and no other."

*Methodist Church* v. *Baltimore*, 6 Gill, 391 ; *Case of the County Levy*, 5 Call, 139 ; *Lockhart* v. *Harrington*, 1 Hawks, 408 ; *Williams* v. *Cammack*, 27 Mississippi, 209 ; *Maloy* v. *Marietta*, 11 Ohio State, 636 ; *Sutton* v. *Louisville*, 5 Dana, 28 ; *Lexington* v. *McQuillan*, 9 Dana, 513 ; *Nichol* v. *Nashville*, 9 Humph. 252 ; *Soens* v. *Racine*, 10 Wisc. 271 ; *Giles* v. *Hooper*, Carth. 135 ; *Brewster* v. *Kidgell*, Ib. 438 ; *The King* v. *Scot*, 3 T. R. 602 ; *Williams* v. *Pritchard*, 4 T. R. 2 ; *Eddington* v. *Borman*, Ib. 4 ; 4 Mass. Col. Rec. part 1, 327 ; *New York* v. *Cashman*, 10 Johns. 96 ; *Astor* v. *Miller*, 2 Paige, 68 ; *Sharp* v. *Speir*, 4 Hill, 76 · *Bleecker* v. *Ballou*, 3 Wend. 263.

*J. P. Healy & C. H. Hill*, for the respondents. 1. The rule of construction to be applied to this exemption is well settled. The language of a grant like this charter — a free gift from the government — if ambiguous, is to be construed against rather than in favor of the grantee. *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 344, 461, 462, 468, 469, and 11 Pet. 420, 544–548. *Mills* v. *St. Clair County*, 8 How. 569. Chitty on Prerog. 391 *et seq.* 3 Cruise Dig. (Greenl. ed.) tit. 27, § 29, note. This rule applies *a fortiori* when the subject matter of the grant is a prerogative right or power enjoyed by the sovereign in trust for the benefit of the whole public. *Martin* v. *Waddell*, 16 Pet. 367 411. *Commonwealth* v. *Roxbury*, 9 Gray, 451, 492. And preeminently to a power of such vital importance to the whole community as the power of taxation. *Providence Bank* v. *Billings*, 4 Pet. 513, 561, 563. *Philadelphia & Wilmington Railroad Co.* v. *Maryland*, 10 How. 376. *Ohio Insurance & Trust Co.* v. *Debolt*, 16 How. 416, 435, 436. All statutes exempting property from taxation are construed strictly, and never extended beyond " the narrowest meaning " " which will fairly carry out the intent of the legislature." *Christ Church* v. *Philadelphia*, 24 How. 300, 302. *The Queen* v. *Aylesford*, 2 El. & El. 538. *People* v. *Roper*, 35 N. Y. 629, 633–635. *Commonwealth* v. *Easton Bank*, 10 Penn. State, 442, 449, 450. *Cincinnati College* v. *State*, 19 Ohio, 110. See also *South Congregational Meeting-house* v. *Lowell*, 1 Met. 538 ; *Commonwealth* v. *Bird*, 19 Mass. 443, 446 ; Miller, J., in *Washington University* v.

*Rouse*, 8 Wallace, 439, 441. This principle applies most forcibly to a charter granted, like this, when the right to modify or revoke it was unquestionable, and when the legislature could have had no intention of binding itself by an irrevocable contract.

2. The natural and popular meaning of the language of this exemption is clear. The college is entitled to enjoy forever, free from taxation, property not exceeding in value five hundred pounds a year, and no more. The contrary decision in *Hardy* v. *Waltham*, 7 Pick. 108, gives a forced and artificial meaning to the clause.

We assume that the license, in the former part of the charter, to hold lands to an amount not exceeding in value five hundred pounds a year, covers any increase in value beyond that amount, of lands owned before the limit was reached. 2 Inst. 722. *Bogardus* v. *Trinity Church*, 4 Sandf. Ch. 633, 758. But that license, though similar in terms, is different in nature from this exemption. All restrictions on the right of a corporation to hold lands are derived from the statutes of mortmain, and rest on principles of feudal policy; and those statutes do not extend to cases of increase in value, because mere increase in value does not conflict with that policy. See *Giblett* v. *Hobson*, 3 Myl. & K. 517, 525, 526. Neither the rule nor the exception has application to a provision like this exemption; and as there are no statutes of mortmain in Massachusetts, the license to hold lands is in fact a restriction on the common law rights of the college, and not a grant, and must be interpreted by different rules from those applying to a grant of an extraordinary privilege touching one of the two most essential powers of sovereignty.

Nor is the fact that the limit of the restriction is also the limit of the exemption conclusive that whatever construction is given to the one must be given to the other. The restriction applies only to real estate; the exemption extends to personal property. Besides, a condition of things now exists as to both, which could not have been in the contemplation of the legislature when the charter was granted, and for which no provision is made therein. In adjudicating upon the rights of the college under the new

and unforeseen increase in value of its property, the court will give to each clause that construction which the nature of the subject matter demands. It will so far extend the license by construction as to allow the college to retain its estates notwithstanding their increase in value; while, as established canons of interpretation forbid that the exemption from taxation should be extended by implication, it will restrict that to the original amount named.

This exemption attaches either to the college or the land. If to the college, it has no connection with any particular parcel of land, and the petitioners' construction is untenable. If to the land, it follows the land into the hands of any purchaser, and all lands of which Harvard College was ever seised before its income amounted to five hundred pounds a year are forever exempted from taxation. *New Jersey* v. *Wilson*, 7 Cranch, 164. *Osborne* v. *Humphrey*, 7 Conn. 335. *Colchester* v. *Kewney*, Law Rep. 1 Ex. 368, and 2 Ex. 253.

The fact that this particular estate has never been taxed is immaterial. The usage of local public officers is inadmissible to aid in the construction of general tax laws. *The King* v. *Hogg*, 1 T. R. 721. *Dwight* v. *Boston*, 12 Allen, 316, 323. And as to this statute, no contemporaneous or prescriptive construction could be given to it, as no question calling for such construction could arise on it until the college had property yielding an income of five hundred pounds a year, which was not till after the Revolutionary War; and before and long after that time all the college property, in common with the property of all colleges in the state, was exempted from taxation by the annual tax acts. As to recent times, a usage which has been caused by *Hardy* v. *Waltham* cannot fairly be pleaded in support of that decision.

If it is asked, how is the college, under the respondents' construction, to enjoy the benefit of the exemption, the answer is, by making an election as to the property to which it desires that the exemption should apply, and by giving the assessors, in all places where it has property, notice accordingly. Since however it always has been, and probably always will be, the policy

of the legislature to exempt the college from taxation to an amount far beyond what is required to satisfy the exemption in its charter, this difficulty is of little practical importance.

There is nothing peculiar to *Hardy* v. *Waltham* which should entitle it to extraordinary weight as an authority. On the contrary, it was a case of novel impression; the opinion specifies no reasons for the decision; and it cannot be sustained on principles of construction consistent with the subsequent cases of *Charles River Bridge* v. *Warren Bridge* and *Commonwealth* v. *Roxbury, ubi supra.* Since the principle of the decision is erroneous, the decision itself should be overthrown. *Mersey Docks* v. *Cameron,* 11 H. L. Cas. 443, 477. And especially should this be so with a decision which has erroneously limited the constitutional powers of the legislature, and which therefore the legislature itself cannot remedy.

3. The assessment laid on the petitioners' estate in this case is not included within their exemption from taxation. It is said that these assessments for local improvements can only be sustained constitutionally as taxes; but that proves nothing. The word "tax" must be allowed its broadest signification, when used in the grant of the power of taxation to the legislature in the Constitution; while in this charter it ought to have no more extended a meaning, to say the most, than can fairly be put upon it with reference to the subject matter. This court has repeatedly recognized the doctrine that the same words must bear different constructions as they appear in statutes or contracts and even in different statutes. *Dole* v. *New England Insurance Co.* 6 Allen, 373, 391–393. *Hamilton* v. *Boston,* 14 Allen, 475, 482, 483. A great part of the labors of courts in interpreting statutes consists in confining broad words to the limits of the purpose in the minds of the legislators.

In this exemption the more indefinite word "impositions" precedes "taxes," and is therefore limited in meaning by it. Besides, it is common learning that when words are coupled together the broader and inartificial word is confined in its meaning to the subject matter included within the narrower one the meaning of which is well defined. *Copulatio verborum indicat*

*quod accipiantur in eodem sensu. Guild* v. *Richards,* 16 Gray,
309, 323. *Saltonstall* v. *Sanders,* 11 Allen, 446, 470. If the
technical meanings of the words are to govern in construction,
" imposition," " tax " and " rate " had all acquired well settled
meanings at common law, before their use in this charter, which
do not include taxes like that now in controversy. 2 Inst. 60,
532, 533. Com. Dig. Prerogative, D, 48. Termes de la Ley,
Tax and Talliage. Toml. Law Dict. Tax, Rate. *Brewster* v.
*Kidgell,* 12 Mod. 166. *The Queen* v. *Aylesford,* 2 El. & El. 538.
But without regard to technical rules, these words are to receive
a reasonable construction. They are used in a nearly synony-
mous sense, and the repetition is only an instance of antiquated
tautology. While full effect is to be given to the purpose of
the legislature, they cannot be allowed by implication to relieve
the petitioners from just burdens, incident to all property and
from which the general court could not have contemplated ex-
empting the college. Will it be pretended that they exempt the
land from the liability of having buildings on it destroyed to
stop a conflagration ? Or is the college, or are its tenants, re-
lieved from the duty of keeping their pavement free from snow
and ice under the city ordinance ? Full effect is given to the
purpose of the legislature, when the college is relieved from ordi-
nary taxation, — from those burdens, general and local, which
lessen the value of property, and are levied for the support of
the government, and the return for which is found in the protec-
tion and advantages which the taxpayer, in common with other
subjects, receives from the government.

Assessments under the Sts. of 1866, *c.* 174, and 1868, *c.* 276
imposed in proportion to the " benefit and advantage " derived
from the street improvement, are taxes differing so radically
from ordinary taxation that they ought not, in justice, to be in-
cluded within an exemption from taxation, when not specifically
mentioned. This " benefit and advantage " is valuable property
which can be set off in payment of private property taken for
public uses. *Meacham* v. *Fitchburg Railroad Co.* 4 Cush. 291.
And if so, it is difficult to see how a recoupment of one half of
its value, that is to say, of one half of a new property created

for the landowner by the improvement, can be deemed an im‧ position or burden within the purpose of this exemption. The landowner must always be left richer than he was before the improvement was made.

The cases of covenants in leases, to pay taxes on the demised premises, are directly analogous. It is well settled that the broad words generally used in these must receive a reasonable construction to effectuate the purpose of the parties to them, and are not given their broadest meaning to include other and widely different taxes and impositions. *Brewster* v. *Kidgell*, Carth. 438; *S. C.* 12 Mod. 166, and 1 Ld. Raym. 317. *Hopwood* v. *Barefoot*, 11 Mod. 237. *Davenant* v. *Bishop of Salisbury*, 1 Vent. 223; *S. C.* 2 Lev. 68. *Watson* v. *Home*, 7 B. & C. 285. *Baker* v. *Greenhill*, 3 Q. B. 148. A covenant to pay taxes imposed on land does not cover taxes imposed on the owner in respect of the land. 2 Platt on Leases, 172, and cases cited. *Palmer* v. *Power*, 4 Irish C. L. 191. *Twycross* v. *Fitchburg Railroad Co.* 10 Gray, 293. And generally it does not cover taxes in the nature of assessments for local improvements. *Southall* v. *Leadbetter*, 3 T. R. 458. *Palmer* v. *Earith*, 14 M. & W. 428. *Tidswell* v. *Whitworth*, Law Rep. 2 C. P. 326. *Love* v. *Howard*, 6 R. I. 116. The construction of broad words like these, in statutes also, excludes assessments for local improvements. *Sharp* v. *Speir*, 4 Hill, 76. *Baldwin* v. *Oswego*, 2 Keyes, 132. *Pray* v. *Northern Liberties*, 31 Penn. State, 69.

But this very question has been very frequently passed upon by the courts, and their decisions have been uniformly in our favor. Taxes for local improvements are not included when property is exempted from taxation, whether by general or special laws. *Guardians of Bedford Union* v. *Bedford*, 7 Exch. 777. *Crowley* v. *Copley*, 2 Louisiana Annual, 329. *In re Mayor, &c., of New York*, 11 Johns. 77. *Northern Liberties* v. *St. John's Church*, 13 Penn. State, 104. *Lefevre* v. *Detroit*, 2 Mich. 586. *Second Universalist Society* v. *Providence*, 6 R. I. 235. *Ottawa* v. *Free Church*, 20 Ill. 423. *Lockwood* v. *St. Louis*, 24 Missouri, 20. The same construction has been put upon exemptions from taxation in the charters of corporations

even when expressed in broader words than this one is, as "from all taxes, charges and impositions," "any tax or public imposition whatever," "taxation of every description." *Paterson* v. *Society for Establishing Useful Manufactures*, 4 Zab. 385. *State* v. *Collectors of Newark*, 2 Dutcher, 519. *Baltimore* v. *Greenmount Cemetery*, 7 Maryl. 517. *Canal Trustees* v. *Chicago*, 12 Ill. 403. *In the matter of College Street*, Supreme Court of Rhode Island, 1868. The petitioners have cited no case to the contrary. Many of these decisions are independent of the others; and this remarkable uniformity of authority in England and America seems to amount almost to conclusive proof that the result in which they concur is the only one tenable, in whatever light the question may be viewed or however it may arise.

WELLS, J. By the colony law of 1650, incorporating Harvard College, the corporation was authorized to " purchase and acquire to themselves, or take and receive upon free gift and donation, any lands, tenements or hereditaments within this jurisdiction of the Massachusetts, not exceeding the value of five hundred pounds per annum." It was also provided " that all the lands, tenements and hereditaments, houses or revenues, within this jurisdiction, to the aforesaid president or college appertaining, not exceeding the value of five hundred pounds per annum, shall from henceforth be freed from all civil impositions, taxes and rates ; all goods to the said corporation, or to any scholars thereof, appertaining, shall be exempt from all manner of toll, customs and excise whatsoever ; and that the said president, fellows and scholars, together with the servants and other necessary officers to the said president or college appertaining, not exceeding ten, viz: three to the president and seven to the college belonging, shall be exempted from all personal civil offices, military exercise or services, watchings and wardings, and such of their estates, not exceeding one hundred pounds a man, shall be freed from all country taxes and rates whatsoever, and no other."

Two questions are presented for our decision in this case : *First.* Whether this exemption in favor of the college applies to assessments upon its lands under the Sts. of 1866, *c.* 174, and

1868, *c.* 276, for the expenses of widening streets upon which they abut. *Second.* Whether the exemption attaches to the particular estate to which this controversy relates, and extends to the whole amount of that estate, notwithstanding the facts that its present value greatly exceeds the original limit of the exemption, and that the college holds other lands, also exceeding that limit in value, aside from lands exempted by the provisions of the general tax acts.

I. The terms of the exemption are as broad as language can make them. " All civil impositions, taxes and rates" include burdens and duties, to be rendered in money or otherwise, imposed by the civil authority, either specifically upon the lands, or upon the owner or occupant in respect thereof, as well as those contributions to the public revenue exacted from citizens and subjects according to their several abilities; the measure of those abilities being rated by the estimated value of their real and personal estates. That it was intended to be made thus broad, without reservation or qualification, is made apparent by the restricted manner in which the other exemptions, provided for in the same section, are defined. The association and order of the terms used may indicate that " civil impositions " are to be limited to such as are in the nature of taxes ; but at the same time they show that the taxes thereby intended are not to be taken in a narrow or restricted sense.

The assessment laid by the board of aldermen of Boston upon this estate of the college, for the expenses of widening Devonshire Street, is, in the strictest sense, a " civil imposition." It is, in its legal character, a tax; for it is levied, and can only be levied, under the power of taxation confided by the Constitution to the legislature, and exercised by the board of aldermen under authority delegated to them by the legislature. *Dorgan* v. *Boston*, 12 Allen, 223. *People* v. *Brooklyn*, 4 Comst. 419. *Burnett* v. *Sacramento*, 12 Cal. 76. *Brewster* v. *Syracuse*, 19 N. Y. 116. *Nichols* v. *Bridgeport*, 23 Conn. 189. That this is the essential character of such an assessment 's recognized by most if not all of the decisions. But in the interpretation of covenants, and statutes of exemption, a distinction is often

made between ordinary taxation in the usual mode, for general expenditures or current revenue, and that which is special an local in its character and purpose. In a covenant for the payment of taxes by a lessee, it is to be ascertained by construction what was contemplated by the parties in the use of the terms employed. Those terms are not necessarily to be taken in their strict legal signification. In a lease for years, especially if for a short term, containing a covenant that the tenant shall pay all taxes assessed upon or in respect of the premises during the term, it would hardly be supposed that the parties intended that the lessee should pay an extraordinary assessment laid upon the premises in view of the permanently increased value of the estate by reason of a public improvement in its vicinity, unless the terms used were such as to admit of no other construction. The contrary presumption is stronger or weaker according to the length of the term of lease. It may be affected by the character, situation and condition of the estate, the mode and purpose of the occupation by the tenant, and by all the circumstances of the particular case. Much weight is sometimes given to the consideration that the assessment in question is of a kind in use or authorized at the time the covenant was entered into; or, on the other hand, of a novel and newly authorized nature. By the aid of such surrounding circumstances, very general words in a covenant may doubtless be construed in a limited sense. But when the words appear to have been chosen advisedly, and are such as to indicate an intent to provide for all possible forms of taxation, all other considerations yield to the intent of the parties, as manifested in the terms of their contract. Such covenants have been held to require a tenant for years to pay assessments like the present. *Walker* v. *Andrews* 3 M. & W. 312. *Giles* v. *Hooper*, Carth. 135. *Thompson* v *Lapworth*, Law Rep. 3 C. P. 149. *Bleecker* v. *Ballou*, 3 Wend. 263.

But it is obvious that considerations like these, although of much importance in the construction of the terms of a covenant, have little or no applicability to the interpretation of a statute containing like words in a provision for exemption. In the lat-

ter case, words so used are the language of the body by whose authority alone taxes and impositions in the nature of taxes can be levied. They import, not a contract of indemnity, or of payment or release of taxes to become due, but a renunciation of the taxing power. They are not used with reference to present and temporary conditions, but have respect to the indefinite future. Unless limited in terms, or by the effect of collocation, recitals or coördinate provisions, an exemption from taxation by statute must imply freedom from the imposition of taxes, not only in the forms and modes already established and in use at the time, but in all forms and modes in which the legislature may from time to time see fit to exercise the power, or authorize it to be exercised, over property within its jurisdiction. The question of exemption must be determined by the essential character of the imposition sought to be made, and not by the basis or mode of its distribution, or the form of its assessment.

It will be seen that the foregoing proposition does not apply to exemptions contained in what are called general tax acts. The effect of such an exemption upon an assessment like the present one, we have no occasion now to consider. Several of the decisions relied upon by the respondents relate to exemptions of that character. This is true of the case of *The Mayor &c., of New York*, 11 Johns. 77, which has been followed in its reasoning, as well as in its result, by nearly all the cases in which it has been held that an assessment for a local improvement is not included in a general exemption from taxation.

The opinion of Chief Justice Bradley of Rhode Island *In the Matter of College Street*, a copy of which is attached to the brief of the respondents, reviews the authorities in which such a restricted interpretation had been put upon words of exemption, in some cases contained in general laws, in others forming a special provision in a legislative charter, and follows the review with this statement: " The principle upon which all these decisions rests does not authorize any distinction in the meaning of the same words of exemption when used in a private charter, from that which they have when used in a general statute."

In the case then under consideration, there was a general exemption from taxation, applicable to the property in question, and also a provision in the charter of the college that "the college estate" "shall be freed and exempted from all taxes." It was held that neither provision freed the college estate from an assessment made thereon for the expenses of widening a street. As the terms of the exemption in that case were somewhat narrower than in the case before us, we need not discuss the propriety or correctness of that decision. But the ground on which it is mainly supported, and which we suppose to be "the principle" referred to as that upon which all the decisions cited were said to rest, does not meet with our concurrence. As stated in the same opinion, the principle is, that such assessments "are, both in the theory of the law and in fact, but the return of a portion of the benefit specially conferred by the improvement;" and that "provisions for exemption from taxes or impositions, whether existing in general statute laws or in special charters, are not to be deemed to include assessments for the improvement primarily of certain special localities, and derived from and carved out of the benefit conferred upon those special localities by these improvements." It must be conceded that, in several of the cases cited, similar propositions are announced.

An application of this doctrine was made in a case in New Jersey, which seems to us to illustrate its fallacy. In *State* v. *Newark*, 3 Dutcher, 185, a railroad corporation being required to pay a direct tax to the state, it was provided that no further or other "tax or imposition shall be levied or imposed upon the company." By the law authorizing commissioners to widen streets, and assess the expenses thereof upon the parties made liable therefor, it was provided that whenever the track of any railroad was laid in any street so to be widened, the commissioners might assess upon the corporation owning such track so much of the expenses of the widening as they should deem equitable and just; and the rest upon adjoining proprietors, in proportion to the advantages received thereby. A portion of the expense of widening a street through which the track of a railroad extended was assessed to the railroad corporation di

rectly, and another portion was assessed to certain lands owned by the corporation adjoining the street. It was held that so much of the assessment as was made to the corporation directly, in respect of its track running through the street, was a tax, and void because contrary to the law which provided for exemption; but that so much of the assessment as was made in respect of its lands adjoining the street, on the ground of a corresponding benefit thereto, was not a tax, and was not in violation of the provision for exemption.

Notwithstanding the number and respectability of these decisions, which have been followed in several states, we are constrained to regard such impositions differently. In our view, their character as a tax or otherwise does not depend upon the mode in which the distribution is made, or the reasons which justify, or may be assigned for, the particular mode of distribution adopted. If the object be one of public necessity, convenience or interest, and the expenditure one which may properly constitute a public burden, the assessment to meet the expenditure is not the less a tax because, in the distribution of public burdens, that particular expenditure is imposed upon a part only of the persons or property subject to taxation within the Commonwealth, and that part designated or ascertained by local limits, or relations of vicinity to or benefit from the proposed improvement or object of expenditure. *Dorgan* v. *Boston*, 12 Allen, 223. In whatever mode the distribution is made, the imposition is to be sustained, upon the ground that the mode is adopted by the legislature in the legitimate exercise of its proper function to apportion the burden with reference to the benefit to be received from the expenditure. This is effected, after first determining the district within which to assess the amount, sometimes by an assessment upon all polls and estates within that district, according to their number and value; sometimes by an assessment upon the lands included within the district, or abutting upon the improvement, according to the value of those lands; sometimes according to the area thereof, or the extent of frontage upon the improvement. In either of these modes, if the expenditure be for a public object, it is still taxation.

Under the statutes in question, the subjects of taxation are ascertained in like manner; but the ratio of assessment is sought to be fixed by an estimation of actual benefit to each estate.   It is not necessary, for the purposes of this suit, to maintain the propriety, or even the validity, of this mode of exercising the power of taxation.   It is enough to show that it is an attempted exercise of that power, and therefore a civil imposition, in the sense of the clause of exemption.   Its validity as such has, however, been sustained in the recent case of *Jones* v. *Aldermen of Boston, ante,* 461.

The improvement in question is manifestly and avowedly one undertaken as a matter of public convenience and necessity. We need not consider whether it could be justified as a measure intended for the improvement of private property, and directed to that end, like the provisions for improvement of meadows, to which it is compared in the decisions before referred to.   It is decisive against that view of the case, that neither the statute nor the proceedings of the aldermen are based upon any such ground, but distinctly regard it as a measure of public concern — as much so as any action authorized or taken for laying out, altering or constructing highways or streets.

Our conclusion is, that an assessment of the cost of a public improvement so authorized and made, whatever may be the mode of its distribution and levy, is a civil imposition within the meaning of the exemption in the statute relating to Harvard College.

II. The second question presents itself in two aspects : 1st. As affected by the fact that the corporation holds other property more than sufficient in amount to exhaust the right of exemption, thus raising the question whether the exemption attaches to or can be applied for the protection of this particular estate; 2d. As affected by the increased value of the property to which this controversy relates.

1. This estate was acquired by the college in the year 1660. It is admitted that, at that time, it was within the limit, and covered by the operation of the provision for exemption.   The

*identity* of the property, thus originally covered by the exemp-
tion, with that upon which the disputed assessment was laid, is
not denied. It is alleged in the petition, not denied in the an-
swer, and was assumed in the argument, that "no tax or other
civil imposition has ever been paid" by the corporation, or
"ever before been assessed or charged upon said estate." These
facts, that the estate was acquired and originally held under the
statute assurance of exemption, and that the immunity, so se-
cured, was enjoyed, without any claim to the contrary, down to
the time of the adoption of the Constitution of the Common-
wealth, have an important bearing upon the interpretation of
the provisions of part 2, *c*. 5, § 1, of that instrument, as affect-
ing this question. It is therein declared that the President and
Fellows of Harvard College and their successors, in their cor-
porate capacity, shall have and enjoy all the rights, immunities,
&c., which they then had or were entitled to have and enjoy;
and the same were ratified and confirmed unto them. It is also
declared that all "gifts, grants, devises, legacies and convey-
ances" theretofore made to said college "are hereby forever con-
firmed" unto them "according to the true intent and meaning"
of the donors.

In *Hardy* v. *Waltham*, 7 Pick. 108, it was held that these pro-
visions applied to the immunity enjoyed by the college in re-
spect to its lands previously acquired, and which had been until
then protected from taxation under the exemption contained in
the St. of 1650. That decision was in 1828. The legislation
of the Commonwealth, before and since that time, accords with
the result in that case.

By St. 1813, *c*. 113, the corporation was authorized to take
and hold real estate "to the clear yearly value of twelve thou-
sand dollars, in addition to what they are now by law authorized
to hold, and in addition to the public buildings of the said uni-
versity occupied by the students and for other public purposes."

In the acts to ascertain the ratable estate within the Com
monwealth, Sts. 1810, *c*. 79, 1820, *c*. 64, and 1830, *c*. 130, all
the estates belonging to Harvard College were excepted. And
in the annual tax acts a similar general exemption was made,

with certain exceptions in favor of local taxation in Cambridge. *Harvard College* v. *Kettell*, 16 Mass. 204. Sts. 1821, *c.* 107, § 6; 1830, *c.* 151, § 6. This course of legislation led to the adoption of the qualified general exemption contained in the Rev. Sts. *c.* 7, § 5.

These considerations, as well as the force of the salutary rule *stare decisis*, would impel us to follow the legal results of the decision in *Hardy* v. *Waltham*, even if we were of opinion that otherwise, as an original question, a different construction from that adopted by the court, in the opinion in that case, should be put upon the terms of the statute of 1650.

This construction of the exemption does not involve the result suggested by the respondents, that the right must consequently pass from the college to the purchaser of the property, in case of a conveyance. That may be the case where the exemption is coupled with a grant of the land, and thus made a quality of the title that is derived from the government which confers the exemption. But this is strictly a provision of immunity to the college in respect of its lands, and cannot enure to the benefit of any other party by virtue of any title he may acquire therein.

For the same reason it will remain for the benefit and protection of the corporation after a sale of the lands to which it originally applied. In what manner and to what extent the corporation will be entitled to make it available in that event, does not concern us now.

We do not consider the question whether the legislature might constitutionally repeal or modify an exemption like that in the statute of 1650; because, in the first place, the statute under which this assessment was made does not indicate any intention so to repeal or modify it; and in the next place, this exemption is itself fortified by a constitutional protection, as was decided in *Hardy* v. *Waltham.*

2. The considerations already mentioned seem to be equally applicable to the case in its other aspect, namely, as affected by the increased value of the estate upon which the assessment was laid.

That, however, which is most decisive to our minds, is the fact that the exemption is coupled in the same statute with the grant of authority to take and hold real estate; and the extent of the privileges thus conferred, both that of proprietorship and that of immunity from public burdens, is defined by precisely the same measure. This would indicate the intent of the statute to be, that lands acquired and held under the authority therein granted were to be held with the privilege of exemption so coupled with the grant. That being so, whatever right or power there might be in the Commonwealth, in case of an advance in the value of the lands beyond the established limit, to require the corporation to reduce its possessions, or to withdraw the exemption from the excess, so long as that power is not exercised all lands properly acquired under that authority may be legally held under it, with the accompanying privilege of immunity, notwithstanding such subsequent advance in value.

This last consideration, which doubtless influenced the decision in *Hardy* v. *Waltham*, seems to us to vindicate the correctness of the law as declared in that case. The result must follow, that the exemption, as applied to this estate, extends to the entire value of the estate.

We deem it proper to advert to one feature in the St. of 1866, *c.* 174, which, although an additional reason for carefully weighing the grounds of decision, we have not been able to regard as affecting the principle which should govern.

The statute separates the estimation of benefits from the assessment of damages, and requires that damages in full shall first be paid, without any deduction on account of the benefit to the property of the party by reason of the improvement; whereas, in the ordinary mode of laying out or altering streets or ways, the damages and benefits are both included in one estimate, and set off against each other, and the award is only of the excess of damages over and above the amount of the benefits.

This deduction of benefits is sometimes classed with civil impositions in the nature of taxes, and referred to the taxing power for its justification. But we are satisfied that it is equally con

sistent with, and may be supported under, the right of exercise of the power of eminent domain. The damages thus awarded are properly an estimate of the amount of injury occasioned to the claimant as the net result of the whole proceedings in their effect upon his estate.

But in this statute the legislature has seen fit, by clear and unequivocal provisions, to make the assessment of the expenses upon the estates benefited a civil imposition in the nature of a tax. It does not affect its character, that it might have been accomplished, in great part, by way of deduction from the damages to the respective estates. To the landowner it may operate as a deduction or set-off, in substantial result. But in mode of proceeding it is distinct from and independent of any previous award of damages in his favor. It was manifestly intended to stand upon some independent ground of authority. We think it must be regarded as an exercise by the legislature of its authority to distribute public burdens, under the taxing power. An assessment so made is a civil imposition, from which this estate is to be held exempt. *Certiorari to issue.*