Susan B. Beals *et al. vs.* Providence Rubber Company.
Walter S. Burges, Trustee, *vs.* Same.

Covenant in a lease whereby the lessee covenants. "to pay the taxes of every name and kind that should be assessed on the premises at any time during the said term ":—
*Held,* not to cover an assessment for benefits accruing from street improvements, made under the act of January, 1854, relating to the laying out, &c. of streets in Providence.

Covenant. On demurrer to the declaration.

*July* 15, 1876.  DURFEE, C. J.  The plaintiffs, as lessors, sue the defendant, as lessee, in actions of covenant upon covenants in their respective leases.  The declarations set forth the covenants as covenants " to pay the taxes of every name and kind that should be assessed on the premises at any time during the said term," &c.  The breach alleged is a neglect of the lessee to pay a certain assessment on the plaintiffs for benefit to them in respect of the real estate demised, — the assessments being made under an act, passed in January, 1854, entitled " An act in relation to the laying out, enlarging, straightening, or otherwise altering streets in the city of Providence." [1]  The defendant having obtained oyer of the leases, from which it appears that the express covenants in the leases are covenants to " pay all taxes that shall be assessed on the premises at any time during said term," &c., omitting the words " of every name and kind," which are found only in the *reddendum* of each of the leases, demurs to the declarations, and contends that he has not committed any breach of his covenants in the leases, upon the ground that an assessment for benefit under the act of 1854 is not a " tax " within the meaning of the word as used in the covenants.

The question raised by the demurrer is not entirely new in this state.  In *Love et ux.* v. *Howard*, 6 R. I. 116, it was held that a covenant in a lease binding the lessee to pay " all taxes and assessments " on the demised lot, did not bind the lessee to pay an assessment under the act of 1854 for the benefit of the lessor's reversionary interest in the lot.  The lease, however, was made in 1847, and the court rested its decision upon the ground that up to that time such an assessment had never been known in the state, and so could not have been in the contemplation of the parties.  In *The Second Congregational Society* v. *City of Providence*, 6 R. I. 235, it was held that a religious society was liable for such an assessment, though exempt from taxation by the general statute.  The same doctrine was reaffirmed *In the Matter of College Street*, 8 R. I. 474.  The court also held in that case that Brown University, though by its charter it was " freed and exempted from all taxes," was liable for such an assessment.  The case was decided after an exhaustive review of the authorities, and

---

[1] Printed in 4 R. I. p. 230 *seq.  In the Matter of Dorrance Street.*

must be regarded as settling the law in this state for the class of cases to which it belongs.

The case at bar differs from the two latter cases in that it is a case between private individuals, whereas the two latter cases were cases involving the right of the city of Providence, in its public capacity, to assess for benefits, under the act of 1854, certain corporations which were by statute or charter exempt from taxation. The plaintiffs insist upon the distinction as favorable to them. Public grants are generally construed more strictly against the grantees. A covenant in a lease is to be construed more strictly against the covenantor. This distinction, however, cannot much affect the value of the cases referred to as precedents; for the cases appear to have been determined not so much by the rule as by reasons which apply as well to covenants as to exemptions. In the case of Brown University, decided *In the Matter of College Street*, 8 R. I. 474, the rule of construction as regards public grants was reversed by the terms of the charter, and yet the court declined to construe the exemption any differently on that account. Indeed, we think it would seldom happen that the same words should not receive the same construction whether they are found in statutes, charters, or covenants, or whether the controversy regarding their meaning arises between two individuals, or between an individual on the one side and the public on the other. We certainly have no right to expect that language will be used with more scientific precision in a covenant than in a statute, especially if the statute has undergone revision.

The counsel for the plaintiffs contends that an assessment for benefit is a tax, and that therefore a covenant to pay " all taxes " is a covenant to pay such an assessment. We have no doubt that an assessment for benefit is a tax. It was so regarded in the earliest decision made by this court under the act of 1854, to wit, *In the Matter of Dorrance Street*, 4 R. I. 230. And we do not understand that any different view was held *In the Matter of College Street*, though that case was decided on the authority of previous cases in some of which a different view was favored. What the court did decide *In the Matter of College Street* was, that an assessment for benefit under the act of 1854 is a tax of so peculiar a character that it does not fall within the meaning of the word as used in the exemption clauses of the general statute

of the state and of the charter of Brown University. In other words, the case recognizes a distinction between the generic or scientific meaning of the word " tax " and its meaning as ordinarily used, taxes being ordinarily exacted for the public service, and not by way of compensation for benefits specially conferred. Such a use of language is not uncommon. For instance, men are animals : and yet men are not animals within the meaning of the word as ordinarily used.

The question, then, is not whether an assessment for benefits is a tax, but whether it is a tax within the meaning of the word as used in the lease. In *Jeffrey et al.* v. *Neale*, L. R. 6 C. P. 240, Bovill, C. J., remarked, that " it has been frequently held that, in cases of this nature, some amount of qualification must be placed on words which at first sight might be capable of a very extensive signification." The remark is borne out by the English cases. *Tidswell* v. *Whitworth*, L. R. 2 C. P. 326 ; *Baker* v. *Greenhill et als.* 3 Q. B. 148 ; *Southall* v. *Leadbetter*, 3 Term Rep. 458 ; *Barrett* v. *Duke of Bedford*, 8 Term Rep. 602 ; and see *Love et ux.* v. *Howard*, 6 R. I. 116, and the cases there cited. The remark is also supported by American authority. *In the Matter of College Street*, 8 R. I. 474, and cases there cited ; *Bolling* v. *Stokes*, 2 Leigh, 178 ; and the remarks of the court in *Harvard College* v. *Boston*, 104 Mass. 482, 483 ; and *The People* v. *Mayor of Brooklyn*, 4 N. Y. 432, 433. The American cases upon exemption claimed under statutes and charters are fully collected in Cooley on Taxation, 147, and note. In some of those cases exemptions granted in the most comprehensive terms were held not to cover assessments for benefit. The reason is, men when they speak of taxes do not think of assessments for benefit, and though, technically speaking, such assessments are taxes, men do not call them taxes but assessments. In the case at bar it seems hardly credible, if the parties designed to have their covenants cover such assessments, that they would have omitted to use the word " assessments," to express their meaning, in addition to the word " taxes." It is urged that we must construe the lease in view of the cases previously decided, in which such assessments had been held to be taxes. But, unhappily for this view, many of the very cases which recognize them as taxes also hold that they are not taxes within the meaning of the word

as ordinarily used in statutes, charters, and contracts. It is also pressed upon us that the language of the leases is " taxes of every name and kind." This language would be entitled to more consideration if it were the language uniformly used in the leases. The words quoted are taken from the *reddendum*. The words of the express covenant are simply " all taxes that shall be assessed on the premises." This indicates that the words " every name and kind " were not specially emphasized in the minds of the parties, and therefore we ought not specially to emphasize them in construing the contracts. See *Jeffrey et al.* v. *Neale*, L. R. 6 C. P. 240. Furthermore, in seeking for the meaning of the parties, it ought not to be forgotten that an assessment for benefit is not assessed upon the premises as taxes on real estate are usually assessed ; but that, under the act of 1854, the two distinct estates of the lessor and the lessee in the premises are each recognized and separately assessed, and that the lessee, having been held to pay the assessment upon his own interest, is now sued for not paying an assessment for benefit accruing to the lessor in respect of the reversion.

The counsel for the plaintiffs cites cases in which lessees have been held liable for such assessments for benefits. In those cases, however, there were other words evincing an intent to extend the liability. Thus, in *Codman* v. *Johnson*, 104 Mass. 491, the language was " taxes and assessments ; " in *Curtis et al.* v. *Pierce*, 115 Mass. 186, " rates, taxes, and duties ; " and in *Blake et al.* v. *Baker et als.* 115 Mass. 188, " taxes and duties." No case is cited in which, in the absence of any such additional word, a lessee has been held liable for such an assessment.

Upon the whole, following the precedents and the reasons upon which the precedents rest, we are led to the conclusion that the defendant is not liable, by virtue of the covenants in the leases, to pay an assessment, under the act of 1854, in respect of the reversionary interest of the lessor in the demised premises, and that the demurrers therefore ought to be sustained.

*Demurrers sustained, and judgment for defendant for costs.*

*Arnold Green*, for plaintiffs.

*James Tillinghast*, for defendants.