DALRYMPLE VS. THE CITY OF MILWAUKEE and others.

*October 3 — October 18, 1881.*

TAX CERTIFICATES. *(1) Limitation of actions upon them. (3) Tax· certificates include street improvement certificates.*

INJUNCTION: *(2) Motions to grant or dissolve; whole record considered.*

1. Sec. 7, ch. 334, Laws of 1878 (limiting the time for actions upon tax certificates), is applicable to a tax certificate issued in January, 1876; and, by virtue of sec. 4976, R. S., the limitation continues in force as to such certificates notwithstanding the repeal of the former act by the revision.

2. While on demurrer the court will not look beyond the complaint to ascertain *when* the action was commenced, yet on the motion to grant or dissolve an injunction, it will consider the *whole record* for that and all other purposes affecting the equities of the parties.

3. A certificate issued on a sale of land for non-payment of an assessment of benefits for a street improvement, is a "tax certificate" within the meaning of sec. 7 of said act of 1878.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that certain lots of the plaintiff in the city of Milwaukee were sold by the city treasurer, in January, 1876, for the non-payment of the city taxes thereon for the year 1875, and of certain assessments of benefits thereon made in the same year, by the board of public works, for street improvements. The certificates of sale were issued to the city, which was the purchaser at such sale, and were afterwards assigned by the city to the defendant *Nash.* February 23, 1881, *Nash* gave notice that he would apply to the city treasurer, on May 25, 1881, to issue deeds pursuant to such certificates. The complaint also contains averments of fact which, it is claimed, show that the assessment for street improvements was irregularly made, and is void. It is also averred therein that before this action was commenced the plaintiff redeemed his lots from the state, county and general city taxes thereon, by paying the same together with all charges on account thereof. The prayer for relief is as fol-

lows: "Wherefore the said plaintiff prays judgment that the said taxes and tax sales, and the said several certificates of tax sales, may be declared null and void; and that said defendants, the city of Milwaukee, and its said treasurer, *Albert Geilfuss*, and his successors in office, may be temporarily, and until the trial and hearing of this cause, and thereafter perpetually, enjoined and restrained from issuing any tax deeds upon any of the lots and property in this complaint described, upon any of said certificates; and that said defendant *Charles D. Nash* may likewise be restrained and enjoined from applying for or receiving such deeds, and from conveying or disposing of said certificates, or any of them, but that he may be ordered and decreed to surrender the same to be cancelled; and that said plaintiff may have such other and further relief as may be just, together with the costs of this action."

Upon the verified complaint an injunctional order was granted to the plaintiff on the 24th day of May, 1881, restraining defendants from issuing or receiving any tax deeds upon any of the certificates mentioned in the complaint until the final hearing of the action. The defendant *Nash* demurred upon the grounds, *first*, that the action was not commenced within the time limited by law, as provided by chapter 334, Laws of 1878, nor within nine months after the making of the sale, nor within nine months after the dates of the several certificates in said complaint set forth and alleged, nor within nine months after the publication of said act; *second*, that the action was not commenced within the time limited by law, as provided by chapter 309, Laws of 1880, nor within one year from the date of the tax sales in said complaint alleged, nor within one year after said act took effect. The city of Milwaukee and *Geilfuss* demurred upon the same grounds as above, and also because the complaint does not state facts sufficient to constitute a cause of action. On the 23d of June, 1881, the defendants moved the court to vacate and dismiss the injunctional order granted to the plaintiff; the

motion was granted on the 27th of June, 1881, and an order entered dissolving the injunction; and from that order the plaintiff appealed.

For the appellant there were briefs by *Markham & Noyes*, and oral argument by *Mr. Noyes*. They contended, *inter alia:* 1. The statute of 1880 is the only one referred to in the demurrer, which can be claimed to bar this action. Unless the demurrer refer to the statute claimed to limit the right to sue, the objection is waived. R. S., sec. 2651. Sec. 7, ch. 334, Laws of 1878, so far as it affects this suit, was repealed by the revised statutes. *Mead v. Nelson*, 52 Wis., 402. And it is not claimed that the action is barred by R. S., sec. 1210e, no reference being made to that section in the demurrer. 2. The sections of the statute referred to in the demurrer have no application to an action of this kind. They relate to proceedings to set aside " any sale of lands for the non-payment of *taxes*," or to " cancel any *tax* certificate," or " to restrain the issuing of any *tax* certificate or *tax* deed  .   .   .   upon any such *tax*." The words " taxes " and "assessments " have each a distinct, well understood and judicially defined signification. They are, and have been for many years, used in contradistinction to each other. They are so used in the constitution, Art. XI, sec. 3. *Weeks v. City of Milwaukee*, 10 Wis., 260; *Lumsden v. Cross*, id., 284, 287; *Hale v. Kenosha*, 29 id., 605; *Bond v. Kenosha*, 17 id., 284; *May v. Holdridge*, 23 id., 93; *Sharp v. Speir*, 4 Hill, 76; Cooley on Taxation, 416, 418; Const. of Wis., art. IV, secs. 31, 32 as amended; *Boston S. F. Society v. Boston*, 116 Mass., 181, and cases cited. This distinction has not only been recognized in the constitution, and universally in the courts, but by the legislature in its enactments; as, for instance, in chapters VII and XVIII of the city charter (ch. 184, Laws of 1874); R. S., secs..1182, 1183; ch. 483, Laws. of 1865, as construed in *May v. Holdridge, supra;* ch. 74, Laws of 1854, as construed in *Brightman v. Kirner*, 22 Wis., 54; ch. 316, P. & L. Laws

of 1869, as construed in *Mills v. Charleton*, 29 id., 400. With the meaning and interpretation thus given to and fixed upon the words "taxes" and "assessments," and the distinctions so carefully and clearly drawn between them, the legislature will be presumed to have been familiar. If "assessments" and "certificates for street work" and "certificates of the Board of Public Works" were intended to be included in the acts in question, the law would have so provided in terms. *Harrington v. Smith*, 28 Wis., 59; *Cleaver v. Cleaver*, 39 id., 96; *Westcott v. Miller*, 42 id., 454; *Sharp v. Speir*, 4 Hill, 84. These sections must be construed with reference to the subject matter of the statutes in which they are found, and of the statutes of which the latter are amendatory. *McHugh v. Timlin*, 20 Wis., 487. In 1875 a decision of this court pronounced the method of the county assessors in making arbitrary classifications and valuations of lands for purposes of general taxation, illegal, and all taxes based thereon void. *Hersey v. Supervisors of Barron Co.*, 37 Wis., 75. This decision was followed by others holding the same doctrine. *Marsh v. Supervisors*, 42 Wis., 502; *Philleo v. Hiles*, id., 527; *Schettler v. Ft. Howard*, 43 id., 48; *Goff v. Supervisors*, id., 55; *Salscheider v. Ft. Howard*, 45 id., 519. Then came the enactment of ch. 334, Laws of 1878, which purported to be an act in relation to the collection and assessment of *taxes*. "The failure of assessors to perform their duties . . . under statutes framed to carry out the constitutional provision that the rule of *taxation* shall be uniform," had "been a fruitful source of litigation, and had seriously embarrassed the collection of the *public revenues*. Ch. 334 of 1878 was obviously designed to mitigate this evil." *Plumer v. Supervisors*, 46 Wis., 175. "The decision in *Plumer v. Supervisors*, which was announced during the session of the legislature of 1879, was followed by the enactment of ch. 255 of that year, which amends ch. 334 of 1878, or rather section 1210b, R. S., which stood as the revised section 5, so that the

reässessment roll and taxes extended thereon are made *prima facie* evidence only of the amount of tax which the plaintiff ought to pay." *Flanders v. Town of Merrimack*, 48 Wis., 570. Then came the following decisions, bearing upon this legislation: *Scheiber v. Kaehler*, 49 Wis., 291; *Single v. Town of Stettin*, id., 645; *Kingsley v. Supervisors*, id., 649; *Monroe v. Ft. Howard*, 50 id., 228. Then followed ch. 309, Laws of 1880, containing the section set up in bar of this action, and purporting to be "an act to amend ch. 50 of the revised statutes of 1878, entitled 'of lands sold for taxes.'" It will be seen by this cursory reference to the origin, history and subject matter of the statutes in question, that they were passed in the first instance "to mitigate the evil" arising from the embarrassment to the collection of the *public revenues* caused by the decisions of this court growing out of the methods of the county assessors in disregarding the constitutional provision of *uniformity of taxation*,— a subject wholly distinct from the methods of special assessments, which are not governed by the rule of uniformity. The legislature must by express and clear terms put these distinct and different proceedings on the same basis, before the court will declare them alike and entitled to the same protection after the lapse of a certain time. Nothing should be presumed in favor of, or to protect, a system of burdening land, such as is stated in the complaint; a system described with such accuracy in *Sharp v. Speir*, 4 Hill, 85, and which has been so frequently denounced in the decisions of this court. If we would judge by other enactments what the legislature intended here, a case in point is furnished by ch. 81, Laws of 1863, and ch. 355, Laws of 1864. The former statute only spoke of taxes, but, to cover the subject of assessments also, the latter statute was passed repealing the former, and expressly including the omitted subject. See *Howes v. City of Racine*, 21 Wis., 514; Burroughs on Taxation, 2, 3, 461–2; *People v. Brooklyn*, 4 N. Y., 419; *Palmer v. Earith*, 14 M. & W., 428; *Guardians*

*v. Comm'rs,* 7 Exch., 777; *Paine v. Spratley,* 5 Kans., 525; *People ex rel. Doyle v. Austin,* 47 Cal., 353.

*J. R. Brigham,* City Attorney, for the respondents the *City of Milwaukee* and *Geilfuss.*

For the respondent *Nash* there was a brief by *Jenkins, Elliott & Winkler.*

LYON, J. The demurrers to the complaint go to the whole cause of action, and, although the record contains no ruling upon them by the circuit court, it is manifest that if they are well taken the injunction was properly dissolved. Section 7, ch. 334, Laws of 1878, is applicable to a tax certificate issued in January, 1876, and prescribes a limitation of nine months after publication of that act, within which time an action to cancel such certificate must have been commenced. The act was published March 25, 1878. But this act, except section 14, was repealed by the Revision of 1878 (section 4978), and the above limitation does not seem to have been reënacted therein. *Mead v. Nelson,* 52 Wis., 402. Yet, by virtue of section 4976, R. S., the limitation continues in force notwithstanding the repeal of the act of 1878, and the time allowed by law to commence an action to cancel a tax certificate issued in 1876, expired December 25, 1878. *Mead v. Nelson, supra; Smith v. City of Janesville,* 52 Wis., 680. It may be observed that in the opinion of Mr. Justice ORTON in the former case, as published in the law periodicals, section 4976 is erroneously cited as section 4984.

It sufficiently appears in the complaint itself that this action was commenced after February 23, 1881, the date of the notice by defendant *Nash* that he would apply for deeds on the certificates. As matter of fact the record shows that it was commenced in May, 1881. While on demurrer the court will not look beyond the complaint to ascertain when the action was commenced (*Smith v. Janesville, supra; Zægel v. Kuster,* 51 Wis., 31), because the demurrer is aimed at the

complaint alone, no good reason is perceived why, on a motion to grant or dissolve an injunction, which goes to the equity of the case, the court should not consider the whole record for the purpose of ascertaining the real equities of the parties. We conclude, therefore, that if the certificates in question are tax certificates, within the meaning of the act of 1878, above cited, an action to cancel them was barred by that act when this action was commenced, and the injunction against issuing or receiving deeds thereon was properly dissolved. This brings us to the question chiefly argued on the hearing of the appeal: Is a certificate issued on a sale of land for non-payment of an assessment of benefits for a street improvement, a tax certificate within the meaning of section 7, ch. 334, Laws of 1878, prescribing a limitation of actions to cancel tax certificates?

The section is as follows: "Every action or proceeding to set aside any sale of lands for the non-payment of taxes, or to cancel any tax certificate, or to restrain or prevent the issuing of any tax deed or any tax certificate, or to set aside and cancel a tax deed, shall be commenced within nine months after the making of such sale, date of such certificate, or recording of such tax deed, as the case may be, and not thereafter; provided, that in the case of sales, tax certificates and tax deeds heretofore made, issued or recorded, such action or proceeding, if not already barred, may be brought within nine months after the publication of this act, and not thereafter."

1. Is such an assessment a tax? We are clearly of the opinion that the question must be answered in the affirmative. It was said in *Knowlton v. Sup'rs*, 9 Wis., 410, and repeated in *Hale v. Kenosha*, 29 Wis., 599, that, in a general sense, taxes are burdens or charges imposed by the legislative power of a state upon persons or property for public uses. In the latter case the distinction is stated between assessments and "other kinds of taxation;" and the following statement of such distinction by Judge BRONSON, in *Sharp v. Speir*, 4 Hill, 76, is quoted approvingly: "Our laws make a plain distinction

between *taxes*, which are burdens or charges imposed upon persons or property to raise money for public purposes, and *assessments* for city and village improvements, which are not regarded as burdens, but as an equivalent or compensation for the enhanced value which the property of the person assessed has derived from the improvement."

It seems to us that the distinction stated by Judge BRONSON is inaccurate and should not have received the approval of this court — or rather of the member of it who wrote the opinion in *Hale v. Kenosha*,— for the approval is only given by way of argument, and was not essential to the decision of the case. The theory of all taxation is, that taxes are imposed as a compensation for something received by the tax-payer. General taxes are paid for the support of government in return for the protection to life, liberty and property which government gives. Assessments of benefits accruing to property by reason of public improvements rest on the same principle. Both forms of taxation are for public purposes, and both are alike burdens upon property. The only substantial distinction between the two forms is, that general taxation is based upon value and subject to the constitutional rule of uniformity, while assessments are not. It was broadly stated in several of the earlier New York cases, that assessment for benefit is not taxation. *In re Mayor, etc., of New York*, 11 Johns., 77; *Blecker v. Ballou*, 3 Wend., 263; *Sharp v. Speir*, 4 Hill, 76. But in the later case of *People v. Mayor, etc., of Brooklyn*, 4 Coms., 419, this doctrine is expressly repudiated, and it is held that an assessment for benefits is a tax. The reasoning of Judge RUGGLES, in his very able opinion in that case, is to the effect that there are but two methods by which money or property can be legally exacted or taken from a citizen by compulsion, to wit, by taxation or by the exercise of the right of eminent domain; and that the distinction between these two methods is, that taxation exacts money from individuals as their share of a public burden, and the tax-payer receives,

or is supposed to receive, just compensation in the benefits conferred by government, and the proper application of the tax; but property taken by right of eminent domain is not taken as the owner's share of a public burden, but as so much more than his share, and hence compensation thérefor must be made.    It being manifest that the imposition of an assessment is not an exercise of the right of eminent domain, it must be an exercise of the power of taxation, and the sum assessed for benefits must necessarily be a tax.

The same doctrine is recognized in some of the cases cited by the learned counsel for the plaintiff in his very ingenious and able argument, notably in *Boston Seaman's Friend Society v. Mayor, etc., of Boston*, 116 Mass., 181.    Also in Cooley on Taxation, 416, ch. 20.    The learned author there says that "one very important species of taxation is that which is exercised in the form of special assessments;" and he entitles the chapter "Taxation by Special Assessment."    In *Weeks v. Milwaukee*, 10 Wis., 242, the late Mr. Justice PAINE, who delivered the opinion of the court, said: "I have no doubt, if these assessments are to be sustained at all, that it must be done upon the ground that they are an exercise of the taxing power."    Page 256.    See also *Harvard College v. Aldermen of Boston*, 104 Mass., 470; *Mayor, etc., of Baltimore v. Green Mount Cemetery*, 7 Md., 517.    It is unnecessary to pursue the subject further.    It must be held that the assessment for benefits imposed upon the plaintiff's lots is a tax, and consequently that the certificates issued pursuant to the sale of the lots for non-payment of the assessment are tax certificates.

It only remains to determine whether or not the term "tax certificates," as employed in section 7 of the act of 1878, was intended to include and does include a tax certificate issued in whole or in part upon a sale of land for non-payment of a special assessment.

The language of the section is general and very comprehen-

sive: "*Every* action or proceeding to set aside *any* sale of lands for non-payment of taxes, or to cancel *any* tax certificate," etc. This fact has great weight in the interpretation of the statute, but is not controlling. The constitutional requirement that "the rule of taxation shall be uniform" is equally general in its terms, yet in *Weeks v. Milwaukee* this court held it qualified and limited by another clause, so as to exclude special assessments from its operation. So there are numerous cases, many of which are cited above, which restrict the operation of like general words in statutes, charters and covenants, and exclude special assessments therefrom. But all of these cases seem to have been determined upon the intention of the legislature, or, in cases of covenants, of the parties, which intention in each case was ascertained (as in *Weeks v. Milwaukee, supra*) from the whole statute or instrument — due regard being had to the circumstances of each particular case. An interesting discussion of this subject will be found in the opinion by WELLS, J., in *Harvard College v. Boston*, 104 Mass., 470; and numerous cases bearing upon it are cited in the opinion, and in the brief of the counsel for the respondents contained in the report of the case.

We look in vain into the act of 1878, and into the general legislation of the state on the subject of taxation, to find any solid grounds upon which the general, sweeping language of section 7 can be construed to exclude the certificates issued on sales for non-payment of special assessments. On the contrary, we find that such assessments go into the tax levy, and, in case of non-payment of the same and of the general taxes, the land charged is sold for the aggregate amount of assessment and general tax, and one certificate issues on the sale. It is scarcely to be supposed that the legislature would thus have blended and intermingled the two levies or charges upon the land, if the effect of the statute of limitations upon the assessment and the general taxes is as widely different as is claimed. Moreover, it has always been the policy of this state

to prescribe a limitation upon actions which call in question the validity or regularity of tax proceedings, much shorter than is prescribed in the general statute of limitations. The act of 1878 illustrates this fact. Many, perhaps most, of the reasons upon which this policy is based are applicable as well to assessments as to general taxes; and we find in the statutes no evidence of any legislative intention to discriminate between them in respect to limitations.

Yet, if it should be held that the limitation of section 7 does not govern in a case like this, then there is no limitation of time upon the right to bring this action, unless it can be found in the statute of limitations. We do not determine whether it can be found there, for we discover no indication in any statute that the legislature intended to exclude this action from the operation of section 7, and place it within the operation of the general statute. For the reasons indicated, we must hold that the limitation of section 7 of the act of 1878 is applicable to this action, and had fully run against it before the action was brought.

It follows that the injunction was properly dissolved, and the order appealed from must be affirmed.

*By the Court.*— Order affirmed.