MILWAUKEE COUNTY, Respondent, vs. MILWAUKEE ELEC-
TRIC RAILWAY & LIGHT COMPANY, Appellant.

*November 10, 1932—January 10, 1933.*

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *James D. Shaw*.

For the respondent there was a brief by *George A. Bowman*, district attorney of Milwaukee county, *C. Stanley Perry*, assistant district attorney, and *Maxwell H. Herriott*, village attorney of Fox Point, of counsel, and oral argument by *Mr. Perry* and *Mr. Herriott*.

WICKHEM, J.    The village of Fox Point is an incorporated village in Milwaukee county.    The defendant is a public service corporation, as defined by sec. 184.01, Stats.    In 1927 the village board divided the village into seven sanitary sewer districts, of which only districts one and two are here involved.    The defendant owned certain rights of way for the operation of a street-car line up to November 2, 1928. A certain portion of the line of the street railway was owned in fee up to this date.    On the date in question the defendant executed a conveyance of all its interest in all the lands involved to the Realty Development & Investment Company. In accordance with the action on the part of the village board, certain sanitary sewers were constructed and assessments made upon adjoining property, upon the linear-foot basis.    Defendant was assessed for 1,293 feet sewer frontage.    The defendant did not pay the assessment, and the taxes were returned as delinquent in lieu of cash, by the village to the county.    In the absence of bidders at the tax sale, the county bid in the tax pursuant to sec. 74.42, and commenced this action under secs. 74.13 and 74.14.    Sec. 74.13, Stats., provides:

"74.13    *Action for collection of taxes against public utilities*.    In addition to the other remedies provided by law for the collection of taxes against real estate, an action of

debt shall lie in the name of the town, city or village, and, after the tax is returned as delinquent, in the name of the county, for any tax heretofore or hereafter levied upon and extended against the property of any public service corporation as defined in section 184.01, which property is subject to taxation like the property of individuals, and which tax remains unpaid after the last day of January in any year. Summons in such action shall issue at the request of the treasurer of the town, city, village or county, as the case may be; shall be served as provided in section 262.09, and such action shall be subject to all of the rules of law and practice in this state applicable to actions of debt. The complaint in such action shall be served with the summons. Judgment in such action shall be entered and execution issued thereon as in other actions of debt. The judgment shall bear interest at the rate of ten per cent. per annum from the date of entry until paid."

The foregoing are sufficient facts to form the basis for considering the contention made by the defendant. It will be noticed that sec. 74.13 is entitled "Action for collection of taxes against public utilities," and that it provides, in addition to other remedies provided by law for the collection of taxes against real estate, that an action of debt shall lie in favor of the town, city, or village for taxes levied upon and extended against the property of a public service corporation, which property is subject to taxation like the property of individuals and is in default. It is further provided that as a condition to defending such an action the defendant must first pay the amount of the tax with interest, penalties, and charges.

It is contended by the defendant that sec. 74.13 has no application to the collection of special assessments against the operating property of a railway company, and that the proceeding should have been under sec. 75.65. The latter section makes the property of every county, city, village, town, and school district within this state, and of every corporation, company, or individual operating any railroad

or street railway, etc., liable to all special assessments for local improvements. It provides that the bonds and certificates for such improvements may be issued and the lien enforced in the manner and to the same extent as the property of individuals. It provides that the amount represented by any certificate or improvement bond shall be a debt personally from such corporation, company, or individual.

Sec. 75.66 provides that the officers authorized to collect taxes from individuals shall have power to collect the special assessments in the same manner as they are collected from individuals, and that they may, upon proper authorization, institute and prosecute an action to collect these assessments in the name of "such city or village." It is provided that like action may be maintained by the owner or holder of any special assessment certificate or improvement bond in his own name and at his own cost. In the case of an action by the city or village, the production of the proper warrant for the collection of the assessment, together with the tax roll or list showing the amount thereof, is to be *prima facie* evidence of the correctness and validity of the assessment. In case the action is brought by the owner or holder of a certificate or bond, the same result follows the production of the certificate or bond, tax roll, or list showing the amount thereof, and warrant for its collection. There is, however, no provision requiring the payment of the amount of such certificate or bond as a condition to defending.

Ch. 76 provides in substance for the assessment of property of railroad and railway companies by the Tax Commission, but sec. 76.02, as that section existed prior to 1931, provides:

"(7) . . . All real estate not necessarily used in operating any railroad or street railway are excepted from railroad and street railway property, and shall be subject to taxation in the manner such property is taxed when owned by individuals."

Secs. 75.65 and 75.66 were enacted by ch. 425, Laws of 1903; secs. 74.13 and 74.14 were enacted by ch. 470, Laws of 1913.

With these provisions of the statutes in mind, the contention of the defendant may perhaps more clearly be stated. The operating property of a railroad or railway company is not subject to local assessment but is assessed by the Tax Commission. The non-operating property is subject to taxation in the same manner as property of individuals, and is assessed by the local unit. All property of a railway company or utility, whether operating or non-operating, is subject to special assessments, and the lien thereof is enforced in the same manner and to the same extent as though it existed against the property of an individual. Defendant contends that sec. 74.13 relates to general taxes, and to property of a utility which is non-operating and therefore which falls under the provisions of sub. (7), sec. 76.02, and is subject to taxation as though owned by an individual. This argument leads to the conclusion that the cause of action, if any, in this case is under sec. 75.65, and that it is in the certificate holder, bondholder, or taxing unit, and not in the county which has bid in the delinquent tax.

Plaintiff's contention is that the remedy created by sec. 74.13 is specifically provided to be in addition to all of the remedies for the collection of "taxes;" that the terms "tax," "taxes," and "taxation" include special assessments, and that sec. 75.65 makes all of the property of a public utility or railroad as subject to special assessments (taxes) as the property of an individual.

It is further claimed that sec. 75.66 is plainly not applicable in this situation for the reason that the instant assessment was levied under the provisions of secs. 62.18 and 62.16 (6), and bonds secured by said assessments and payable in instalments were issued pursuant to sec. 62.21. The bonds issued were for the par value of $1,000 each,

*and were secured by all of the assessments grouped as provided for in sec. 62.21 (2) (c).* They were not bonds secured by individual assessments, and hence it is claimed are not within the category of those certificates and bonds referred to by sec. 75.66; that such bondholders have no right to sue property owners or to foreclose as they could in 1919.

It is further pointed out that sec. 62.21 (1) (d)· provides that instalments of special assessments securing special improvement bonds "shall be returned to the county as delinquent and accepted and collected by the county in the same manner as delinquent general taxes on real estate," and that sec. 62.21 (1) (h) 1 requires that all special as-sessments and instalments of special assessments which are returned to the county treasurer as delinquent by any city, town, or village treasurer and accepted by the county treasurer in lieu of cash, under par. (d) of sub. (1), shall be set forth in a separate column of the delinquent return and shall be plainly distinguished from special assessments issued under laws prior to the passage and publication of ch. 406 of the Laws of 1927. It is contended that the former practice was to return special assessments for collection as trust items, but that since the county is now required to accept the delinquent return in ·lieu of cash, the special assessments have acquired, at least with reference to their collection, the character of general taxes. It is further claimed, in view of the fact that bonds are secured by all the assessments and the delinquent assessments credited as though they were general taxes, and an amount reserved by the local taxing unit to meet these bonds out of the general funds, that there is the same urgency for monetary realization as exists in the case of general taxes.

It is further claimed that since the taxes were returned by the village and the village credited by the county, the village lost all right to maintain an action under sec. 75.66,

and that the county never had an action under this section; that there being no certificates or bonds against separate property, there was no right in the bondholders or any certificate holder under sec. 75.66, and this section is therefore wholly inapplicable in all situations where the bond issue is secured by all the assessments, and where the special assessments are returned to the county in lieu of cash.

It is concluded that the proper construction of sec. 74.13 is that it does not apply to special assessments or to the operating property of a utility. While in some instances the words "tax" or "taxation" may be treated as including special assessments, it ordinarily means a general tax. In *Yates v. Milwaukee,* 92 Wis. 352, 66 N. W. 248, it was held that a statutory provision that certain land shall not be subject to taxation does not exempt it from special taxes or assessments for local improvements. It was said there:

"While assessments are said, in strictness, to be made under the taxing power, they are 'so far separated and distinguished from general taxation as to have obtained a distinct name, and that name, assessments. As such, they have been known and described for a number of years in the older states, in their contracts, laws, and constitutions. A clear distinction between them and other taxation was established.' . . . A familiar illustration of the popular understanding is found in the language used in leases, and in those before us, where general taxes, when so intended, are named simply as 'taxes;' and when assessments are intended the words 'special taxes' or 'assessments' are employed to express such intent."

It was recognized in the opinion that under various provisions for selling and conveying lands charged with assessments for non-payment, the assessment may be said to be a tax, as there is no other method by which collection can be enforced save through the agency of the laws for the sale and conveyance of lands for the non-payment of general taxes. *Dalrymple v. Milwaukee,* 53 Wis. 178, 187, 10

N. W. 141; *Sheboygan County v. Sheboygan,* 54 Wis. 415, 421, 11 N. W. 598. Thus it appears that while the words "tax" and "taxation" ordinarily do not refer to special assessments, the context of a particular statute may require that they be construed to include special assessments. The contention of the plaintiff, based upon these cases, is somewhat persuasive when applied to references in sec. 74.13 to the words "tax" and "taxes." However, there is another portion of the section to which this argument cannot validly be applied. Assuming, for the moment, that the words "tax" or "taxes" as here used include special assessments, there is another objection to be disposed of. The section refers to taxes assessed against the property of a public service corporation, which property is *"subject to taxation like the property of individuals."* Whatever meaning may be given to the words "tax" or "taxes," the phrase "subject to taxation like the property of individuals" must mean subject to taxation generally and not merely subject to assessments. Such a conclusion is in accord with the doctrine of the *Yates Case* and with the natural meaning of the words. Furthermore, the language used in defining a class of utility property subject to the section is substantially identical with that used in sec. 76.02, which makes non-operating property of the railroad exempt from the provisions of ch. 76, and provides that it shall be "subject to taxation like the property of individuals," and quite dissimilar to sec. 75.65, which provides merely that the lien of a special assessment may be enforced against the property of a railroad or utility in the same manner and to the same extent as the property of individuals. Further than this, it is to be noted that sec. 74.13 was enacted in 1913, and that its construction cannot depend upon subsequent legislation. Thus the provisions of sec. 62.21 which are relied upon here, cannot, we think, throw any light upon the

meaning of sec. 74.13, for the reason that this section was enacted in 1927–1929. The changes in this section, which are important here, are those permitting the grouping of assessments and the issuance of bonds secured by the group, and those relating to the return of delinquent assessments to the county in lieu of cash. These new provisions raise a doubt as to whether the provisions of secs. 75.65 and 75.66 have any application to the present situation. As is pointed out by the plaintiff, the city or village has returned the tax to the county and received credit. There is no certificate holder or bondholder who is secured by any particular assessment. It can quite easily be argued that there is a genuine need for assistance of the sort provided foı in sec. 74.13. However, this condition of affairs did not exist when sec. 74.13 was enacted, and the legislative intention manifested. At that time the grouping of assessments and the issuance of bonds against the group of assessments was not authorized. Secs. 75.65 and 75.66 provided an adequate remedy in the case of all special improvements, and this fact fortifies the conclusion, which is almost inevitable from the language of sec. 74.13, that the legislature did not intend to make this section applicable to the operating property of a public utility.

This conclusion makes it evident that plaintiff has no standing to sue under sec. 74.13, and no cause of action under this section. It therefore becomes unnecessary to consider the other contentions of defendant.

It follows that the judgment must be reversed and the complaint dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.