STATE EX REL. DORST, Respondent, vs. SOMMERS, County Treasurer, and another, Appellants.

*March 12—April 9, 1940.*

For the appellant Sommers, county treasurer, there was a brief by *O. L. O'Boyle,* corporation counsel, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Perry.*

For the appellant Service Investment Company there was a brief by *Shea & Hoyt,* attorneys, and *Ralph M. Hoyt* of counsel, all of Milwaukee, and oral argument by *Mr. Hoyt.*

For the respondent there was a brief by *Wright & Mayer* of Milwaukee, and oral argument by *Albert A. Mayer.*

FAIRCHILD, J.   In determining the effect of an amendment upon a statute in existence for many years, the history of the law is important, and consideration must be given to the practice that grew up under the statute while in its original form.

The amendment to sec. 75.01 (1), Stats., reads: "provided, that when an application is made . . . to redeem from any tax sale, any part or portion of any lot or parcel of land . . . the county clerk [now county treasurer] . . . *is authorized to* ascertain, by affidavits or by actual view, the true proportion of taxes chargeable to the part or portion sought to be redeemed, and the amount so found shall be deemed to be the amount required for the redemption thereof."   Sec. 3, ch. 218, Laws of 1893.   In 1898 the reviser changed the words "is authorized to" to read "may." We construe the statute now as though "may" had been used originally, since that was the import of the words used.   If the amendment was intended to destroy the practices theretofore authorized and followed by county treasurers, the word "may" as there used would be construed as "must."   On the other hand, if the amendment was intended to suggest additional methods to those commonly used by county treasurers, the use of the word "may" would carry its usual meaning and be directory only.   It appears that for years the practice obtained of granting an owner a division for the purpose of redeeming portions of property on which taxes were in default, and that the method of ascertaining the proper division had in each case been to secure the opinion of the assessor or the clerk of the local municipal units.   In the instance now being considered, after the request was made for a division,

the county treasurer submitted the matter to the assessor of the village in which the property is situated, and received a written report from the assessor and the division was made.

The question now arising is: Has the practice which the county treasurers had followed prior to the amendment, and which they have followed since, been outlawed? There evidently existed a generally used method of determining values of portions of a lot for the purpose of division under the tax redemption statute, and the statute as it existed prior to 1893 certainly made such a procedure sufficient for the ascertainment of a proper division on partial redemption. It achieved the object for which the legislation was enacted. The subsequent legislation by way of amendment does not by word or by necessary implication reject that method. It is generally understood that where a subsequent statute declares additional acts may be done in furtherance of the intent of the prior act, the later act does not necessarily exclude the practice under the former. It rather sets up further possible steps to those already pursued.

"Where the meaning of a statute or any statutory provision is not plain, a court is warranted in availing itself of all legitimate aids to ascertain the true intention and among them are some extraneous facts. The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principal but also the minor provision of a statute." 2 Lewis' Sutherland, Statutory Construction (2d ed.), p. 864, § 456.

This work is also authority for the proposition that "if the statute has been in force for a long period it may be useful to know what was the contemporary construction; its practical construction; the sense of the legal profession in regard to it; the course and usages of business which it will affect."

The practice outlined as the one followed by the county treasurer in a division and partial redemption from tax liens, apparently confined the treasurer's attention to a division on

the basis of a proportion suggested by the assessor. This would result in furnishing the county treasurer with information that would seem to be of value in making a proper apportionment of values in partial-redemption proceedings. The legislation which came into being in 1893 does not seem to be aimed at an abolition of this practice or the exclusion of information so secured, but rather to enable the owner to offset or support that showing by use of an affidavit or by inducing the treasurer himself to view the premises.

The purpose of the legislation appears to have been to add a choice of methods rather than take anything away from existing practices. The original statute was enacted for the purpose of giving the owner of land sold for taxes the right to "redeem the same or any part thereof or interest therein." There certainly has been no attempt to lessen or in any way interfere with that purpose. The procedure to be followed was originally left to the official whose duty it was to make the division. To suggest the use of affidavits or personal view, without showing an intent to require the discontinuance of the practice long since established, does not amount to a repeal of the method adopted by custom. It is merely suggestive or permissive. There is no conflict. The old method and the additional acts made possible by the amendment may stand together with full effect.

Sec. 75.01 (1), Stats., provides that the owner of any land sold for taxes or special assessments may redeem the same or any part thereof or interest therein by paying to the county treasurer the amount due on the certificate or such portion thereof as the part or interest redeemed shall amount to. We hold that this is a clear grant of right to the property owner; and that the word "may" as used in the clause "may ascertain by affidavits or by actual view" is permissive and not mandatory. This conclusion is influenced by the fact that the important thing in the statute is the grant of power

to the treasurer to ascertain what proportion of the tax is attributable to the part of the land being redeemed, and the statement that the amount so fixed by him shall be deemed to be the amount required for redemption.

We agree with the appellants that the actual view of the premises does not constitute a finding. It is merely one means of aiding the judgment of the treasurer. The same is true of the affidavits. They may disclose different estimates, and doubtless they will be used to supplement the information supplied by the local assessor. The statute directs something to be done generally, and does not appoint any special manner in which it is to be done.

The objection is raised by the respondent that a partial redemption of a tax sale certificate representing the lien of a delinquent special-improvement assessment may not be had under sec. 75.01 (1), Stats. His argument is that the section is only applicable to general property taxes. It must be admitted that there is a distinction between general taxes and special assessments; but this distinction drops out after the tax sale, so that the collection of delinquent special assessments is the same as that of delinquent general taxes. *Dalrymple v. Milwaukee,* 53 Wis. 178, 10 N. W. 141; *Sheboygan County v. City of Sheboygan,* 54 Wis. 415, 11 N. W. 598; *Yates v. Milwaukee,* 92 Wis. 352, 66 N. W. 248; *Wisconsin Real Estate Co. v. Milwaukee,* 151 Wis. 198, 138 N. W. 642; *Bankers Farm Mortgage Co. v. Christofferson,* 221 Wis. 148, 266 N. W. 220. In *Yates v. Milwaukee, supra,* at page 359, it was said that an assessment may be said to be a tax "as there is no other method by which collection can be enforced save through the agency of the laws for the sale and conveyance of lands for the non-payment of general taxes." Therefore, we hold that sec. 75.01 (1), Stats., does apply to partial redemption of property sold for special assessments as well as that sold for general taxes.

Whether the lien is a tax lien or a special-assessment lien, the authorities have in each case visited a levy upon the property. The property is to be held for the payment thereof, and so far as the lien resulting from the special assessment is concerned, it has all the essentials of a tax lien. True, the contractor whose services are to be paid has title to the bond. His payment comes out of the proceeds of the levy rather than out of the public treasury in the first instance to be replaced when the property owner pays. But so far as the government and the taxpayer are concerned, defaults in the payment of either taxes or assessments must be governed by the provisions of the laws relating to tax sales and redemption. *Yates v. Milwaukee, supra.*

The part of sec. 75.01 (1), Stats., which provides that the treasurer upon a request for partial redemption "may ascertain by affidavits or by actual view the true proportion of taxes chargeable to the part or portion sought to be redeemed" applies to land owned in severalty. The respondent contends that ownership in "severalty" means ownership by more than one person. The appellants claim "severalty" ownership means single ownership, as contrasted to tenancy in common and joint tenancy. The definition of an estate in severalty given in 2 Bouv. Law Dict., Rawle's Third Revision, page 3055, is:

"An estate which is held by the tenant in his own right only, without any other being joined or connected with him in point of interest during the continuance of his estate." The meaning of the word when used with reference to ownership of property is well settled and is contrary to the view of the respondent.

The ultimate ownership of the redemption money is of no consequence to the owner of the lot. The distinction between taxes and special assessments to which we have referred has been recognized as material before a tax sale but not afterward, for under the provisions for selling lands for

nonpayment of special assessments, it cannot well be doubted but that within the meaning of these acts an assessment may be said to be a tax.

In making his claim that the special-assessment lien is a lien on the whole property, the respondent seems to neglect the fact that the essence of the partial-redemption plan is that upon the payment of a just proportion of the tax lien, the property will revert to the owner free of the tax lien. His lien has been discharged *pro tanto*. What lien remains must be collected out of the remaining property.

The policy of the law is not to compel forfeiture by any man of his estate, when from inability or inadvertence he has failed to meet his engagements or to perform his duties by some exact date prescribed by the statute. "On the contrary, it is for the welfare of every community that the law should favor the citizen in all reasonable measures for the preservation of his estate against losses which might result from his misfortunes or his faults, extending to him all the liberality that is consistent with justice to others and to a proper regard for the interest of the public." 4 Cooley, Taxation (4th ed.), p. 3064, § 1558.

The respondent's contention that his lien exists against the entire property in view of the words contained in the bond— is answered by saying that the contract was under the very statute which has been the subject of discussion here. The provisions for division became a part of his contract, and the statute is not a violation thereof; but rather by virtue of its being law at the time of the contract, was a part of the contract itself. It is not unusual to make provisions for the release of a certain portion of the property upon adequate payment therefor, and the statute providing for partial redemption outlines the methods by which this aim is to be achieved. There is no evidence here that a fair apportionment was not made. The fact that the part redeemed was more valuable than the remaining section does not necessarily

mean that the benefit received by it was greater than that accruing to the less valuable section.

There are other questions raised, but they do not affect the result. The determination that the provision relating to affidavits and view of the premises are not mandatory, and that collection of special assessments after default follows that provided for general taxes, disposes of the case.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the petition.

FOWLER, J. (*concurring*). I concur in the result reached by the opinion of the court, but reach my conclusion on ground different from that taken in that opinion. I agree with the trial court that in the statute involved "may" is mandatory where it applies, but I think that the mandatory provision does not apply to the situation here involved.

To construe the statute as the court construes it renders the provision relating to taking an affidavit or inspection by the county treasurer meaningless and entirely without effect. The construction leaves the provision not only ineffectual but entirely purposeless. It is a fundamental rule of statutory construction that the intent of a statute, when its intent is ascertainable, must be carried out—that statutes must be given effect according to their purpose.

The statute involved is sec. 75.01 (1), Stats. It stood in R. S. 1878 as sec. 1165. By ch. 415, Laws of 1889, it was amended to read:

"The owner or occupant of any land sold for taxes . . . may . . . redeem the same, or any part thereof, or interest therein, by paying to the county clerk . . . . for the use of the purchaser, . . . the amount for which such land was sold, . . . or such portion thereof as the part or interest redeemed shall amount to. . . . ."

It is to be noted that the statute before amendment did not require any specified procedure or action by the county clerk to determine or as basis for determining the proportion of

the tax to be attributed to the part redeemed. By sec. 3, ch. 218, Laws of 1893, sec. 1165 was amended by merely adding thereto at the end thereof the following:

"Provided, that when an application is made to the county clerk to redeem from any tax sale, any part or portion of any lot or parcel of land, which was sold for taxes as a whole, but which is owned in severalty, the county clerk, before making a receipt for the redemption of such part or portion thereof, is authorized to ascertain, by affidavits or by actual view, the true proportion of taxes chargeable to the part or portion sought to be redeemed, and the amount so found shall be deemed to be the amount required for the redemption thereof."

The portion of the statute added by the amendment still stands in the statute without change except that the words "county treasurer" are substituted for "county clerk" and the word "may" is substituted for "is authorized." The portion of sec. 1165, Stats. 1878, as amended in 1889, as above quoted, still remains in the present statute except that the words "county treasurer" have been substituted for "county clerk."

The purpose and intent of the provision of the statute relating to the county treasurer's acting upon affidavits or personal inspection becomes clear when we consider how it was placed in the statute. It was placed there by the legislature in 1893 as above shown by merely adding to the existing statute which had been in force for years the provision that when land "is owned in severalty" an apportionment of the tax "may" be made by the treasurer on his doing as stated. The meaning of the clause as used in the statute is that when the ownership of a tract taxed as a whole is divided into "several," that is, two or more, distinct parcels, the owner of a distinct parcel may redeem his parcel by paying the part of the tax proportionately attributable thereto on getting the county treasurer to determine by taking affidavits or inspection the portion of the tax so attributable.

Before the amendment was made no particular proof or manner of securing information was required to entitle the owner of the entire tract to redeem part of it by paying the part of the tax against the whole tract proportionately attributable to that part. The owner or owners of the tract, whether it was owned jointly, in common, or by a single individual, might redeem a part by so paying. As long as the tract is owned as a whole no owner but the owner or owners of the whole tract is interested in what portion of the tax is left as a lien on the unredeemed portion. But when a parcel of the tract has been sold the purchaser of that part becomes interested in how much of the total tax on the tract is left by redemption of the remaining or any part of the land a lien on the parcel owned by him. Or if the purchaser wishes to redeem the parcel he has purchased, the original owner of the whole tract is likewise interested. The less that is paid by the redemption of a part the more is left to be paid by the owner or owners of the remainder. Before the sale of part, redemption is permitted upon any sort of information the county treasurer may wish to accept, but after sale of a part, for the protection of the owner of the part not redeemed, the treasurer is required to take affidavits or make a personal inspection. As in the instant case no part of the tract has been sold and the redemption was made by the owner of the whole tract, no affidavit or inspection was necessary and the action of the county treasurer in permitting the parcel redemption was proper.

While it is true that sec. 230.43, Stats., provides that "estates, in respect to the number and connection of their owners, are divided into estates in severalty, in joint tenancy and in common," and that the phrase "estates in severalty" in the statute refers to ownership by a single person, it does not follow that the phrase was used in that sense in the amendment of the statute instantly involved. The phrase may be given the meaning above attributed to it upon the common

or dictionary meaning of the word "severalty," one of which meanings is (Webster) "state of separation from the rest, or from all others; character of being several, individual, distinct."

The statute for construction of statutes, sec. 370.01, requires that words shall be taken in the sense in which they are commonly used. The meaning shall be given to them which they have in common parlance. The meaning that commonly would be given to the phrase "owned in severalty" as used in the statute is owned in several distinct or separate parcels.

It is true that the statute for construction of statutes says that words having a technical meaning in the law must be given that meaning in a statute. But "severalty" standing alone does not imply an estate in severalty. Nor does the phrase "owned in severalty." If giving a technical legal meaning to a word or phrase renders a statute senseless and without reason for its enactment, while common meaning gives sense to it and supplies a reason or purpose for its enactment, the common rather than the technical meaning should be given.

As pointed out by respondent in his brief, the dictionary meaning of "in severalty" above stated accords with that given in sec. 62.19 (6), Stats., relating to assessment of special benefits. The language there used is:

"Whenever any lot . . . shall be subdivided by sale or contract or by use or occupation *in severalty,* after the assessment of special benefits as herein provided, said board of public works may, after ascertaining such facts, at any time before the special assessment shall have been inserted in the tax roll, make an equitable apportionment of the benefit tax against such lot or parcel of land among the different subdivisions thereof."

I think the phrase "in severalty" in sec. 75.01 (1), Stats., should be given the meaning it unquestionably has in sec. 62.19 (6).

Under this construction, the relator has no standing to bring the action because the lot is not owned in several distinct or separate parcels, and the 1893 amendment, the part of the statute relating to apportionment when distinct parcels are held by different owners, has no application. In such case the county treasurer may plainly do as was customarily done prior to amendment of the statute as was done here.

I am authorized to state that Mr. Justice WICKHEM concurs in this opinion.